UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

GEORGE FORD,

        Plaintiff,

v.

UNKNOWN SMITH et al.,

        Defendants.
_____/

Case No. 2:17-cv-164

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods, Isard, Travelbee, Russell, Bernhardt, Hubbard, and Batho. The Court will serve the complaint against Defendants Smith, Payment, Campbell, and Seames.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Corrections Officer Unknown Smith, Warden Jeffrey Woods, Deputy Warden Unknown Isard, Emergency Management Section Unknown Travelbee, Hearing Administrator Richard Russell, Seargent Unknown Bernhardt, Inspector Unknown Hubbard, Officer Unknown Payment, Corrections Officer Unknown Campbell, Resident Unit Manager Unknown Batho, and Corrections Officer Unknown Seames.

Plaintiff alleges that in 1999, while he was incarcerated at the Marquette Branch Prison, he received a notice of intent (NOI) classifying him to segregation. The NOI stated that Plaintiff was a high ranking official in the Melanic Islamic Palace of the Rising Sun (MIPRS). On January 18, 2000, Plaintiff was informed that the Melanics would no longer be recognized as a religion by the MDOC. On the same day, Security Threat Group (STG) Coordinator Todd Dunn suggested that Plaintiff sign a form renouncing MIPRS. Plaintiff agreed to sign a renunciation form, but Dunn did not accept it because Plaintiff was a spiritual leader in MIPRS, who could not dissociate himself from the group or from any violence perpetrated by the group. Plaintiff states that he was never involved with any violence perpetrated by members of MIPRS. On June 23, 2000, Plaintiff was transferred to the Baraga Maximum Correctional Facility.

On April 6, 2006, the STG Coordinator asked Plaintiff if he was ready to renounce the "Nubian Islamic Nation." Plaintiff explained that he knew nothing about the Nubian Islamic

2

Nation and signed the form. Plaintiff was removed from STG status and began to participate in various programs without engaging in any disruptive behavior.

On July 24, 2015, Plaintiff was transferred from Kinross Correctional Facility (KCF) to URF. Plaintiff's typewriter was checked and determined to be working when he left KCF. When Plaintiff arrived at URF, he observed that the seals on his property were broken and that his typewriter was unboxed and had been tampered with. Plaintiff questioned Officer Bauers about his property. Officer Bauers stated that Defendant Smith knew Plaintiff from the past and wanted to personally search his property. After Defendant Smith searched Plaintiff's property, he left the area and Officer Bauers returned Plaintiff's property. When Plaintiff checked his typewriter, he found that it was damaged and inoperable. Plaintiff also discovered that Defendant Smith had confiscated his Casio keyboard and a memo that Plaintiff had written to members of the MIPRS in 1998. Plaintiff never received a hearing on his confiscated property.

On July 26, 2015, Plaintiff attempted to file a grievance on Defendant Smith regarding the damage to his typewriter "and retaliation for the 1999 riot at URF." On July 29, 2015, Grievance Coordinator McLean rejected the grievance and instructed Plaintiff to send him a request for a DTMB-1104 Form in order to institute a claim against the State. McLean also told Plaintiff to re-submit a grievance regarding staff misconduct. Plaintiff complied with McLean's instructions. Plaintiff's grievance was rejected a second time. On August 11, 2015, Plaintiff sent a letter to Grievance Coordinator McLean seeking to have his grievance processed. Plaintiff did not receive a response. Plaintiff contends that the process for handling the DTMB-1104 Property Claim Complaint was totally ineffective and "reeked with prejudice." Plaintiff sent a letter to Defendant Isard and enclosed the three rejected grievances. Defendant Isard did not respond.

On August 27, 2015, Plaintiff was charged with a class II major misconduct for disobeying a direct order by using the bathroom. Plaintiff had a hearing on September 9, 2105, and was found guilty of being out of place, which was not a lesser included charge for disobeying a direct order. When Plaintiff complained, Defendant Batho replied that he could do whatever he wanted, asking Plaintiff "[D]o you think you can give orders to assault our Officer, write grievances, and you think you're going to be alright here?" Defendant Batho also stated that Plaintiff's grievances meant nothing and that he had no recourse. Plaintiff discovered that Defendant Smith provided copies of the 1998 memo written by Plaintiff to members of the MIPRS (Melanic Islamic Palace of the Rising Sun) and the 1999 Notice of Intent to staff at URF in order to encourage negative actions against Plaintiff for his role in the 1999 assault on URF staff.

On September 15, 2015, Plaintiff submitted an appeal of the misconduct conviction to Defendant Batho. On September 16, 2015, Plaintiff wrote a memo to Defendant Isard, adding a retaliation claim to his appeal of the misconduct and seeking help regarding Defendant Batho's refusal to process his grievances. On October 1, 2015, Defendant Isard denied Plaintiff's misconduct appeal.

On December 11, 2015, Plaintiff was transferred to Neebish unit within URF. On his first day in the new unit, Defendant Payment told Plaintiff that he would have to walk a tightrope for the 1999 assault on Neebish Unit Officers. Defendant Payment said, "We don't tolerate assaults and grievances against our Officers at URFucked." On December 28, 2015, Defendant Payment called Plaintiff to the desk and told him that he was getting two minor misconduct tickets. When Plaintiff asked for details regarding the infractions, Defendant Payment said:

> It doesn't matter you are guilty as charged whether you did it or not. I told you the
> first day you arrived that you had to walk a tight rope for 1999 and your grievance

4

> against Officer Smith. You know that 1999 happened in this unit, right? We don't tolerate assaults and grievances against our Officers at URFucked.

See ECF No. 1, PageID.12. Plaintiff balled up the misconduct report and placed it on the desk, telling Defendant Payment to do whatever he wanted. As Plaintiff was walking back to his cell, Defendant Payment said that he was sending Plaintiff to the hole. Defendant Payment then ordered Defendant Campbell to escort Plaintiff to segregation. On January 6, 2016, Plaintiff was found guilty of the two misconduct tickets. Plaintiff's appeal was denied by Defendant Russell on March 28, 2016.

On February 9, 2016, Plaintiff was interviewed by the Security Classification Committee (SCC) and expressed his concerns regarding Defendants Smith, Payment, and Campbell. The SCC determined that Plaintiff was not a threat and released him to the general population. On February 15, 2016, Defendant Seames was working in the school building when Plaintiff was scheduled to be a speaker at a Black History event being held in the gym. Defendant Seames observed a prisoner from Neebish Unit giving Plaintiff affidavits from other prisoners who were corroborating Plaintiff's retaliation claims. Defendant Seames then searched Plaintiff and confiscated the affidavits. Defendant Seames refused to return the affidavits to Plaintiff, saying that Plaintiff was "walking a slippery slope if [Plaintiff thought] that [he could] file" complaints and grievances. The affidavits were turned over to the Inspector and other officers. On February 29, 2016, Plaintiff filed a grievance on Defendant Seames, but never received a response. On March 14, 2016, Plaintiff filed a grievance on the Grievance Coordinator McLean regarding his failure to respond to the grievance on Defendant Seames. On April 4, 2016, Plaintiff sent a memo to Defendant Woods regarding Grievance Coordinator McLean's refusal to process his grievances, but Plaintiff did not receive a response.

On February 25, 2016, Defendant Smith conducted a shake down on Plaintiff. Plaintiff asked Defendant Smith if he was the property officer. When Defendant Smith said that he was, Plaintiff told Defendant Smith that he had filed a complaint on him for damaging his typewriter. Defendant Smith stated:

> Fuck your typewriter, you don't need a typewriter here, because you file too many complaints and grievances, so I thought that I would get rid of it before you start. Plus, since 1999, I've been waiting for your ass. Now you have to pay just like those who were involved in those assaults against our officers. The State Police failed to prosecute you, so you won't escape the hands of URF unharmed. When we finish with you, you'll never assault another officer or file another grievance …."

See ECF No. 1, PageID.15. Plaintiff filed a grievance on Defendant Smith, but did not receive a response. Therefore, Plaintiff filed a grievance on Grievance Coordinator McLean on March 10, 2016, and sent a memo to Defendant Woods on March 21, 2016.

On April 7, 2016, Plaintiff was transferred from East URF to West URF. Both units are level II, but Plaintiff asserts that West URF is slightly less restrictive. However, on April 8, 2016, Plaintiff was transferred back to East URF. When Plaintiff asked why he was being transferred back to East URF, he was told that Defendant Hubbard did not want him on the West side because he was a Melanic leader. On April 12, 2016, Plaintiff wrote to Defendant Hubbard and asked to be transferred back to West URF. On April 26, 2016, Plaintiff wrote a grievance on Defendant Hubbard regarding the transfer. Plaintiff's grievance was not processed. Defendant Hubbard recommended that Plaintiff be placed on STG (Security Threat Group) II status because of his alleged leadership in the Melanics, for his "Jpay correspondents," for being possession of certain documents, and for making personal phone calls. Plaintiff claims that these reasons were merely a pretext and that the true reason for the STG II designation was to retaliate against Plaintiff for the 1999 assaults on URF officers, as well as for his conduct in filing grievances. On May 4,

6

2016, Plaintiff was placed on STG II by Defendant Bernhardt and was transferred to URF Level IV.

Plaintiff filed a grievance on Defendants Bernhardt and Woods on May 9, 2016. In the step II and III appeals, Plaintiff included claims against Defendants Smith, Payment, Campbell, Seames, Batho, Hubbard, Isard, and McLean. Plaintiff asserts that Defendant Woods violated grievance policy in responding to step II even though he was named in the grievance. Plaintiff's grievance was denied at every step. On May 16, 2016, Plaintiff was transferred to MBP, a level V facility, by Defendant Woods.

On July 14, 2016, Plaintiff sent three "unacknowledged" grievances to Defendant Russell as a step III appeal in URF-16-05-1939-8G. On July 26, 2016, Defendant Russell issued a memo entitled "Prohibited Grievances directly filed to Step III." On August 8, 2016, Plaintiff filed a grievance against Defendants Travelbee, Bernhardt, and Hubbard, asserting racial discrimination related to Plaintiff's affiliation with the Melanics and infringement of Plaintiff's First Amendment and due process rights. Plaintiff claims that Defendant Russell did not provide adequate post-deprivation remedies regarding Plaintiff's typewriter, denied Plaintiff's appeal on two fabricated major misconduct tickets, and denied or rejected all of Plaintiff's grievances.

Plaintiff's request for reimbursement for his damaged typewriter was denied by the State Administrative Board. Plaintiff had his typewriter repaired at the cost of $216.12. Plaintiff filed a grievance on Defendant Russell for sending a copy of the denial to the Warden at KCF, instead of to Defendant Woods at URF. Plaintiff believes that the State Administrative Board was biased against him.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff must establish that Defendants Isard, Travelbee, and Russell were personally involved, or that they otherwise encouraged or condoned the action of the offending employees. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976) and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). There must be more than merely a right to control employees, as Plaintiff must show that Defendants Isard, Travelbee, and Russell at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employees. *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiff fails to allege any facts that show Defendants Isard, Travelbee, and Russell encouraged or condoned the conduct of subordinates, or that they authorized, approved or knowingly acquiesced in the conduct.

Moreover, Defendants Isard, Travelbee, and Russell may not be held liable under § 1983 merely because they denied Plaintiff's grievances and appeals. *Shehee*, 199 F.3d at 300

9

(defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act). Because Plaintiff's claims against Defendants Isard, Travelbee, and Russell are premised on nothing more than respondeat superior liability, they fail to state a claim. *Copeland*, 57 F.3d at 481.

Plaintiff's claim that the denial of his requests to be transferred from URF violated his rights lacks merit. A prisoner has no right under federal law to compel or prevent a transfer to another facility. *See*, *Burr v. Duckworth*, 547 F. Supp. 192 (N.D. Ind. 1982); *affirmed*, 746 F.2d 1482 (7th Cir. 1984) (absent a statute or regulation giving rise to some right or justifiable expectation, refusal to transfer does not constitute violation of a constitutionally protected or recognized interest); *Finetti v. Soley*, 73 A.D.2d 955, 424 N.Y.S.2d 273 (1980) (absent a violation of positive statute or a denial of constitutional rights, refusal to transfer is not judicially reviewable); *accord*, *State v. Ryan*, 351 N.W.2d 186 (Iowa 1984); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986) (prison regulations allowed, but did not require, transfer where all criteria were met by prisoner; authorities retained complete discretion to transfer; thus no liberty interest created); *Lamb v. Maschner*, 633 F. Supp. 351 (D. Kan. 1986) (transsexual requested transfer to woman's prison denied); *accord*, *Meriwether v. Faulkner*, 821 F.2d. 408 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987). Michigan's statutes and regulations give the prison authorities complete discretion regarding placement of prisoners. *See* Michigan Department of Corrections Policy Directive 05.01.140; Mich. Comp. Laws § 791.264.

Plaintiff also claims that Defendants Woods, Hubbard, Bernhardt, and Travelbee all "acquiesced" in transferring Plaintiff to various units within URF on four different occasions prior to Plaintiff's transfer to MBP on May 16, 2016. Plaintiff claims that these transfers were

10

motivated by a desire to retaliate against him for 1999 staff assaults, and for filing grievances and being Melanic. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted above, Defendant Travelbee's only involvement in this case was that he failed to respond to Plaintiff's complaints. Because such conduct is insufficient to show personal involvement in the allegedly retaliatory actions, Plaintiff's retaliation claim against Defendant Travelbee is properly dismissed.

Plaintiff's involvement in the 1999 assaults on prison officials is not protected conduct for purposes of a retaliation claim because such behavior violates the MDOC Policy Directive governing prisoner discipline. *See* MDOC Policy Directive 03.03.105. *See also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors

11

during a religious service had engaged in an unprotected challenge to institutional authority). However, to the extent that Plaintiff is claiming that his conduct in filing grievances was protected, he is correct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

As set forth above, Plaintiff was transferred from East URF to West URF on April 7, 2016, and although both units are level II, Plaintiff claims that West URF is slightly less restrictive. Defendant Hubbard had Plaintiff transferred back to East URF on April 8, 2016, because Defendant Hubbard did not want a Melanic leader in West URF. Plaintiff's attempt to be transferred back to West URF was unsuccessful. Defendant Hubbard subsequently recommended that Plaintiff be placed on STG (Security Threat Group) II status because of his alleged leadership in the Melanics, for his "Jpay correspondents," for being in possession of certain documents, and for making personal phone calls. Plaintiff claims that these reasons were merely a pretext and that the true reason for the STG II designation was to retaliate against Plaintiff for the 1999 assaults on URF officers, as well as for his conduct in filing grievances. On May 4, 2016, Plaintiff was placed on STG II by Defendant Bernhardt and was transferred to URF Level IV.

Plaintiff's assertion that Defendants Hubbard, Bernhardt, or Woods were motivated by a desire to retaliate against him for filing grievances is completely unsupported by any factual allegations. Plaintiff does not deny that he is a Melanic. The MDOC has classified the Melanic Islamic Palace of the Rising Sun and its incarcerated members, the Melanics, as a security threat group. *See Johnson v. Martin, et al.*, 2005 WL 3312566 (W.D. Mich. 2005) (unpublished). The reason given by Defendant Hubbard for Plaintiff's STG designation was that he is a Melanic. Because Plaintiff has failed to allege any specific facts in support of a finding of retaliatory motive on the part of Defendants Hubbard, Bernhardt, or Woods, this claim is properly dismissed.

12

Plaintiff also claims that his STG designation violated his equal protection rights because it constitutes racial discrimination. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose in his designation as an STG member. Plaintiff asserts that Melanic merely means that he is African American. However, as noted above, the MDOC has determined that members of the Melanic Islamic Palace of the Rising Sun are called Melanics, and that the Melanic Islamic Palace of the Rising Sun is a security threat group. As noted above, there is a NOI stating that Plaintiff was a high ranking official in the Melanic Islamic Palace of the Rising Sun (MIPRS). Plaintiff states that he attempted to sign a renunciation form, but that it was not accepted because Plaintiff was a spiritual leader in MIPRS, who could not dissociate himself from the group or from any violence perpetrated by the group. Plaintiff fails to allege any facts indicating that his designation as an STG member was motivated by a desire to discriminate against him on the basis of his race. Therefore, Plaintiff's equal protection claim is properly dismissed.

Plaintiff states that the MDOC policy on security threat groups, MDOC Policy Directive 04.04.113, is unconstitutional as applied to him and that he should never have been labeled an STG II. However, Plaintiff previously challenged his designation in *Ford v. Martin, et al.*, Case No. 2:02-cv-13 (W.D. Mich. Apr. 1, 2002). In the prior case, the Court noted that Plaintiff's designation did not constitute a due process violation because his designation as an STG member does not implicate a liberty interest. *Id.* ECF No. 3, PageID.71. Moreover, Plaintiff's claim that his initial designation as an STG II member was motivated by a desire to retaliate against him is completely unsupported by any factual allegations and lacks merit. Finally, Plaintiff's claim that his due process rights are violated by MDOC Policy Directive 01.06.110, which provides that

14

the specific information used to designate Plaintiff as a STG II member is exempt from disclosure, fails since the STG II classification does not implicate a liberty interest.

Plaintiff claims that Defendant Batho refused to process his grievances in order to retaliate against him for filing grievances. As noted above, a First Amendment retaliation claim requires that an adverse action be taken against Plaintiff that would deter a person of ordinary firmness from engaging in protected conduct. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005). For the same reasons, a refusal to process grievances does not constitute an adverse action. Therefore, Plaintiff's retaliation claim against Defendant Batho is properly dismissed.

Plaintiff asserts that Defendant Smith violated his due process rights when he damaged Plaintiff's typewriter and confiscated his keyboard. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378

15

(6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Plaintiff claims that he was unsuccessful in obtaining reimbursement for his typewriter from the Court of Claims and Prisoner Benefit Fund. He does not allege whether he has sought relief from the State Administrative Board. However, in order to satisfy due process, the post-deprivation remedy does not have to guarantee a successful outcome, nor is required to provide relief equivalent to that available in a § 1983 action. *See Parratt*, 451 U.S. at 543-44. As the Court has instructed: "Although the state remedies may not provide . . . all the relief which may have been available . . . under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt*, 451 U.S. at 544. Due process only requires that an adequate post-deprivation remedy be available when the deprivation of property

occurs. *Id.* at 544. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Because there were adequate post-deprivation remedies available to Plaintiff, his due process claim against Defendant Smith will be dismissed.

Finally, the Court notes that Plaintiff's retaliation claims against Defendants Smith, Payment, Campbell, and Seames are not clearly frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, Isard, Travelbee, Russell, Bernhardt, Hubbard, and Batho will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Smith, Payment, Campbell, and Seames.

An Order consistent with this Opinion will be entered.

Dated: July 16, 2018        /s/ Janet T. Neff
                            Janet T. Neff
                            United States District Judge