UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GEORGE FORD #158819,

        Plaintiff,

v.

UNKNOWN SMITH, et al.,

        Defendants.

                                 /

Case No. 2:17-cv-00164

Hon. Janet T. Neff
U.S. District Judge

## **REPORT AND RECOMMENDATION**

### Introduction

This is a civil rights action brought by state prisoner George Ford pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on October 4, 2017. He alleged that Defendants violated his rights while he was confined at the Chippewa Correctional Facility (URF). Plaintiff's remaining claims allege acts of retaliation by four Defendants: Scott Smith, Derick Campbell, Jack Payment, and Sharron Seames.

Defendants filed a motion for summary judgment (ECF No. 19) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response. (ECF No. 24.) Defendants filed a reply. (ECF No. 26-2.)

As an initial matter, Defendant Smith concedes that Plaintiff exhausted his administrative remedies regarding his retaliation claim involving a broken typewriter. (ECF No. 26-2, PageID.333-34.) Defendants argue that all other remaining retaliation claims are unexhausted.

The undersigned respectfully recommends that this Court find that genuine issues of material fact remain as to whether Plaintiff exhausted his administrative remedies relating to (1) his retaliation claim against Defendants Campbell and Payment for issuing Plaintiff false minor misconduct reports in December of 2015, and (2) his retaliation claim against Defendant Seames for confiscating three legal affidavits on February 15, 2016.

Accordingly, I respectfully recommend that the Court deny the summary judgment motion to dismiss the remaining Defendants and allow the case to go forward only on the claims identified above.

**Plaintiff's Allegations**

Plaintiff has outlined a relatively complex course of events that began in 1999. In 1999, Plaintiff was incarcerated in the Marquette Branch Prison. He claims that he was asked to sign a form renouncing his membership in the Melanic Islamic Palace of the Rising Sun (MIPRS). The Michigan Department of Corrections (MDOC) determined that the MIPRS was not a religious group. The MDOC classified MIPRS as a Security Threat Group (STG). Plaintiff says he agreed to sign the form renouncing his membership, but alleges that the form was not accepted due to MDOC's belief that he was a leader of the MIPRS.

On April 6, 2006, Plaintiff was asked by the STG Coordinator to renounce his membership in the "Nubian Islamic Nation." Plaintiff explained that he knew nothing about that group and signed the form.

Plaintiff explained that, on July 24, 2015, he was transferred from the Kinross Correctional Facility (KCF) to URF. Plaintiff's typewriter was checked and determined to be working when he left KCF. When Plaintiff arrived at URF, he says that he observed that the seals on his property were broken and that his typewriter was unboxed and had been tampered with. Plaintiff questioned Officer Bauers about his property. Officer Bauers stated that Defendant Smith knew Plaintiff from the past and wanted to personally search his property. After Defendant Smith searched Plaintiff's property, he left the area and Officer Bauers returned Plaintiff's property. When Plaintiff checked his typewriter, he found that it was damaged and inoperable. Plaintiff also discovered that Defendant Smith had confiscated his Casio keyboard and a memo that Plaintiff had written to members of the MIPRS in 1998. This alleged conduct constitutes Plaintiff's first retaliation claim. Exhaustion is not in dispute as to this claim.

Relating to this first claim, Plaintiff also said that, on February 25, 2016, Defendant Smith conducted a "shake-down" of Plaintiff. Plaintiff asked Defendant Smith if he was the property officer. When Defendant Smith said that he was, Plaintiff told Defendant Smith that he had filed a complaint on him for damaging his typewriter. Defendant Smith allegedly stated:

> Fuck your typewriter, you don't need a typewriter here, because you file too many complaints and grievances, so I thought that I would get rid of it before you start. Plus, since 1999, I've been waiting for your ass. Now you have to pay just like those who were involved in those assaults against our officers. The State Police failed to prosecute you, so you won't escape the hands of URF unharmed. When we finish with you, you'll never assault another officer or file another grievance . . . ."

3

(ECF No. 1, PageID.15.) Plaintiff alleges that he never received a response to the grievance he filed against Defendant Smith.

Next, Plaintiff says that he discovered that Defendant Smith had provided to staff at URF copies of a 1998 memo written by Plaintiff to members of the MIPRS and a 1999 "Notice of Intent" in order to encourage negative actions against Plaintiff for his role in the 1999 assault on URF staff. As a result, Plaintiff alleges that he received several misconduct tickets.

Plaintiff stated that, on December 11, 2015, he was transferred to Neebish unit within URF. On his first day in the new unit, Defendant Payment told Plaintiff that he would have to walk a tightrope for the 1999 assault on Neebish Unit Officers. Defendant Payment allegedly said, "we don't tolerate assaults and grievances against our Officers at URFucked." According to Plaintiff, on December 28, 2015, Defendant Payment called Plaintiff to the desk and told him that he was getting two minor misconduct tickets. When Plaintiff asked for details regarding the infractions, Defendant Payment allegedly said:

> It doesn't matter you are guilty as charged whether you did it or not. I told you the first day you arrived that you had to walk a tight rope for 1999 and your grievance against Officer Smith. You know that 1999 happened in this unit, right? We don't tolerate assaults and grievances against our Officers at URFucked.

(ECF No. 1, PageID.12.)

Plaintiff says he balled up the misconduct report and placed it on the desk, telling Defendant Payment to do whatever he wanted. As Plaintiff was walking back

4

to his cell, Defendant Payment said that he was sending Plaintiff to the hole. Defendant Payment then ordered Defendant Campbell to escort Plaintiff to segregation. On January 6, 2016, Plaintiff was found guilty of the two misconduct tickets. This alleged conduct constitutes Plaintiff's second retaliation claim.

On February 9, 2016, Plaintiff was interviewed by the Security Classification Committee (SCC) and expressed his concerns regarding Defendants Smith, Payment, and Campbell. The SCC determined that Plaintiff was not a threat and released him to the general population.

Next, on February 15, 2016, Plaintiff states that Defendant Seames was working in the school building when Plaintiff was scheduled to be a speaker at a Black History event being held in the gym. Defendant Seames observed a prisoner from Neebish Unit giving Plaintiff affidavits from other prisoners who were corroborating Plaintiff's retaliation claims. Defendant Seames then searched Plaintiff and confiscated the affidavits. Defendant Seames refused to return the affidavits to Plaintiff, saying that Plaintiff was "walking a slippery slope if [Plaintiff thought] that [he could] file" complaints and grievances. The affidavits were turned over to the Inspector and other officers. Plaintiff alleges that he filed a grievance on this issue, but never received a response to his grievance. This alleged conduct constitutes Plaintiff's third retaliation claim.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense

6

-- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel*, 270 F.3d at 1056 (citing 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable

7

procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the

issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent

---

[1] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy

Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

## Plaintiff's Grievances

The records presented to this Court include two grievances relating to Plaintiff's retaliation claims.[2]

First, Plaintiff filed **Grievance URF-1605-1939-08G** with an incident date of May 4, 2016. (ECF No. 20-2, PageID.237.) Plaintiff asserted that ***Sergeant Bernhardt*** told him he was on STG II and that no further explanation will be given. Plaintiff alleged that Bernhardt, the Warden, and staff at URF have been retaliating against him since he arrived at URF because of the 1999 riot resulting in the stabbing of corrections officers. Plaintiff asserted that he was being retaliated against for filing grievances. *Id.*

The response found that, despite Plaintiff's renunciation of his membership with the Melanic group, he continued his affiliation and "was acting in a high-ranking leadership role." Sergeant Bernhardt documented this information, which led to Plaintiff's STG II designation. The grievance was denied because Plaintiff's STG II status was reinstated properly. (PageID.238.)

At Step II, Plaintiff asserted that the underlying issue not addressed in the Step I response involved the retaliatory actions taken against him due to staff assaults by Melanic prisoners in 1999. Plaintiff alleged that he began complaining

---

[2]   Plaintiff also relies on a grievance he claims he filed a grievance against Defendant Seames in February 2016. He claims this grievance was never adjudicated and, as a result, was not assigned a grievance number.

11

about staff retaliation after Defendant Smith broke his typewriter the same day that he transferred into URF. Plaintiff alleges that Bernhardt used the same information to place him on STG II status that had been used in 2000. There was no new information regarding STG activities. (PageID.235, 239.) Plaintiff's grievance was denied at Step II. (PageID.236.)

Plaintiff continued to explain in his Step III grievance that he was not acting in a high ranking leadership role in the Melanic organization and that no information was provided to support his STG II status. For the first time, Plaintiff asserted that he believed Defendants Smith, Payment, Campbell, and Seames all retaliated against him for his role in the staff assaults that occurred in 1999, and for filing of complaints and grievances against staff members. (PageID.240-241.) Plaintiff's Step III grievance was denied. (PageID.234.)

Second, Plaintiff filed **Grievance URF-1602-0699-03B** with an alleged incident date of February 9, 2016. (PageID.245.) Plaintiff alleged that he spoke with Deputy Isard at the SCC interview and told him that if he was transferred to URF, he would be retaliated against because of the 1999 assault on staff. Plaintiff requested a transfer to a new facility. Plaintiff alleged that instead of being transferred, he was placed in an environment where two officers issued fabricated misconducts on him, causing his placement in segregation. Plaintiff alleged that he was being harassed and retaliated against. *Id*.

Plaintiff's grievance was denied at Step I because there was no violation of policy or inappropriate behavior by Deputy Warden Isard or RUM LaLonde.

(PageID.246). The investigation revealed that Plaintiff was a high ranking official in the Melanic organization in 1999. The Michigan State Police investigated the organization for staff assaults and assault plots. In addition, Plaintiff claimed that "he has no problem with Payment or Campbell or anyone else and he will just deal with them in court." *Id*.

Plaintiff asserted, at Step II, that the real issue involves the tampering of his duffle bag, footlocker, and property after he transferred to URF. Defendant Smith confiscated a memo Plaintiff had written to all MIRPS members in 1998. Plaintiff asserted that Defendant Smith retaliated against him because of the 1999 assaults by damaging his property, and that Defendants Payment and Campbell retaliated by fabricating two misconduct tickets that reclassified him to administrative segregation. Plaintiff said that Officer Payment told him to walk a tight rope because they did not tolerate assaults and grievances, and Officer Campbell told him he should not give orders to assault officers and should not write complaints and grievances on officers. Plaintiff requested a transfer from the facility. (PageID.249.)

The grievance was denied at Step II. (PageID.244.) The response stated that Plaintiff claimed that his life was in danger and that the SCC denied his request. On February 9, 2016, Plaintiff was reclassified from administrative segregation to level II general population. There was a finding of no violation of policy. *Id*.

Plaintiff explained in his Step III appeal that, due to the 1999 riot involving the stabbing of several officers, he was concerned with the retaliatory actions by staff since he arrived at URF. (PageID.247.) Plaintiff said he was not asking for

13

protection. Plaintiff stated that Defendant Smith damaged his typewriter and confiscated his Casio keyboard. He also said that, after he was transferred from URF West to URF East, Defendant Payment told him he needed to walk a tight rope due to the 1999 incident and for filing a grievance against Defendant Smith for damaging the typewriter. Plaintiff asserted that several staff members were retaliating against him and the matter could only be resolved by a transfer to a different prison. (PageID.248.) Plaintiff's Step III grievance appeal was denied. (PageID.242.)

## Analysis

Defendant Smith concedes that Plaintiff exhausted his administrative remedies regarding his retaliation claim that Defendant Smith damaged his typewriter. That issue remains in this case.

As explained above, the MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. Plaintiff must name each defendant in a properly exhausted grievance before filing a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee"). Defendants Campbell, Payment, and Seames argue that Plaintiff failed to exhaust his administrative remedies on the claims asserted against them. A review of the materials in the record reveals that Plaintiff did not name Defendants Campbell, Payment, or Seames in Step I of either of the grievances identified above. But that does not end the inquiry.

Plaintiff argues that he does not need to name each individual Defendant in a Step I grievance. Plaintiff argues that he satisfied his burden of exhausting his administrative remedies by asserting that all staff had retaliated against him. Thus, Plaintiff claims that **Grievance URF-1605-1939-08G** exhausted his retaliation claims against Defendants Payment, Campbell, and Seames.

Plaintiff's claim that Defendants Payment, Campbell, and Seames retaliated against him – which he raises for the first time in his Step III of Grievance URF-1605-1939-08G – fails to properly exhaust his administrative remedies for several reasons. First, Plaintiff did not explain what conduct that each Defendant took against him. Second, Plaintiff's grievance relates to conduct that occurred on May 4, 2016. But Plaintiff did not assert that Defendants Payment, Campbell, or Seames took any retaliatory action against him on that day. Third, and most importantly, Plaintiff failed to name Defendants Payment, Campbell, and Smith until he filed a Step III grievance appeal. Where a prisoner fails to name a Defendant in his Step I grievance, or mentions an individual is involved for the first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Kean*, No. 1:12-cv-847, 2013 WL 5771146 at *6. Plaintiff's failure to name Defendants prior to his Step III grievance constitutes a failure to properly exhaust his claims against them. In the opinion of the undersigned, **Grievance URF-1605-1939-08G** did not properly exhaust claims against Defendants Payment, Campbell, and Seames.

Plaintiff asserted in Step II of **Grievance URF-1602-0699-03B**, that Defendants Payment and Campbell retaliated against him by issuing false minor misconduct tickets. This presents a closer question regarding whether Plaintiff properly exhausted his retaliation claims against Defendants Payment and Campbell. Plaintiff's grievance identified a February 9, 2016, incident date. Plaintiff alleged in his complaint that, on February 9, 2016, he expressed concerns to the SCC regarding future retaliatory actions from Defendants Payment, Campbell, and Smith. Plaintiff says he received two minor misconduct tickets from Defendants Payment and Campbell during December of 2015.

Plaintiff failed to comply with MDOC policy requiring him to include in his Step I grievance "the names of all those involved in the issue being grieved." Policy Directive 03.02.130 ¶ R. The grievance was not rejected at any Step, but was addressed on the merits. In *Mattox,* 851 F.3d at 596-97, the Sixth Circuit found that a defendant was not entitled to summary judgment for failure to exhaust administrative remedies when the plaintiff first named the defendant beginning with his Step II grievance. In accordance with *Mattox*, and liberally construing Plaintiff's complaint in the light most favorable to Plaintiff, it is recommended that the Court find that Plaintiff properly exhausted his retaliation claims against Defendants Payment and Campbell for allegedly issuing him false minor misconduct tickets in December of 2015.

Finally, Plaintiff alleged in his complaint that he attempted to exhaust a grievance against Defendant Seames for confiscating three legal affidavits on February 15, 2016. Plaintiff stated that he never received a response to his grievance and never received a hearing.

Plaintiff attached as an exhibit to his complaint a Step I grievance that was not assigned a number, which constitutes some evidence to support his allegation that he was prohibited from exhausting his administrative remedies against Defendant Seames. (ECF No. 1-8, PageID.100.) This un-numbered Step I grievance is dated February 29, 2016, but bares a stamp indicating that it was received by the MDOC on July 25, 2016. Plaintiff asserted that Defendant Seames confiscated his affidavits on February 15, 2016. *Id*.

Plaintiff includes some information showing that he attempted to have this grievance adjudicated. He submitted a letter he sent to the grievance coordinator. It was dated March 14, 2016, and requested that his Step I grievance be assigned a grievance identifier number, or that he be giving a Step II form with an identifying number. (PageID.101.) Then, on April 4, 2016, Plaintiff asked the Warden to process his grievance at Step II. (PageID.102.) Plaintiff now asserts that the MDOC refused to process this grievance through no fault of his own.

The Defendants do not offer an adequate counter or explanation for these allegations. Along with their reply brief, Defendants submitted the affidavit of Michael J. McLean, who is an MDOC employee. McLean attests that he never received Step I grievances regarding Defendant Smith destroying Plaintiff's

17

typewriter on July 26, 2015, or on August 6, 2015, and he never received a letter from Plaintiff dated August 11, 2016.  McLean also states that he has no record of a grievance from February 25, 2016, regarding a claim of retaliation against Defendant Smith.  (Affidavit of Michael McLean, ECF No. 26-2, PageID.339-342.)

Defendants never addressed Plaintiff's claim that the MDOC failed to process his grievance against Defendant Seames.  For this reason, a question of fact exists as to whether Plaintiff was prohibited from exhausting his administrative remedies against Defendant Seames.  At the very least, Plaintiff has shown that he submitted his Step I grievance on his claim that Defendant Seames confiscated his affidavits, and that the grievance was not processed by the MDOC, despite his efforts to have it processed through the grievance system.   Defendants have failed to rebut Plaintiff's assertion.

**Recommendation**

The undersigned respectfully recommends that this Court find that genuine issues of material fact remain as to whether Plaintiff exhausted his administrative remedies relating to (1) his retaliation claim against Defendants Campbell and Payment for issuing Plaintiff allegedly false minor misconduct reports in December of 2015, and (2) his retaliation claim against Defendant Seames for confiscating three legal affidavits on February 15, 2016.  In addition, it is undisputed that the retaliation claim against Defendant Smith for allegedly damaging Plaintiff's typewriter remains.  Accordingly, I respectfully recommend that the Court deny the

summary judgment motion to dismiss the remaining Defendants and allow the case to go forward only on the claims identified above.


Dated: June 6, 2019 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).